M3UCkroP

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        19 Cr. 338 (GHW)

5   MOAZU KROMAH,

6              Defendant.

7   ------------------------------x

8                                        New York, N.Y.
                                         March 30, 2022
9                                        3:06 p.m.

10
    Before:
11
                    HON. GREGORY H. WOODS,
12
                                         District Judge
13
                          APPEARANCES
14
    DAMIAN WILLIAMS,
15       United States Attorney for the
         Southern District of New York
16  BY:  JARROD L. SCHAEFFER
         Assistant United States Attorney
17
    JEFFREY CHABROWE, ESQ.
18       Attorney for Defendant

19

20

21

22

23

24

25
```

M3UCkroP

```
1              (Case called)
2              MR. SCHAEFFER:  Good afternoon, your Honor.  Jarrod
3    Schaeffer for the government.
4              THE COURT:  Good.  Thank you very much.
5              MR. CHABROWE:  Good afternoon, your Honor.  Jeffrey
6    Chabrowe for Mr. Kromah.
7              THE COURT:  Thank you very much.  Good afternoon,
8    counsel.  Let's begin.
9              So first, let me note for the record that we're using
10   the services of an interpreter here.  I think that you should
11   be interpreting now, sir.
12             Thank you.
13             Let me begin.  Since we're using the services of an
14   interpreter, let me just begin briefly with you,
15   Mr. Interpreter, what I would like to do is ask a series of
16   questions of you before we begin with the proceeding.
17             So, let me begin with you.  Can I ask you to please
18   state your name just for the record.
19             THE INTERPRETER:  Yes.  My name is Lanzay Kandeh.
20             THE COURT:  Good.  Thank you very much.
21             So can I just ask briefly, sir, can you please tell me
22   what your native language is.
23             THE INTERPRETER:  My native language is Mandingo.
24             THE COURT:  Thank you.  And how did you learn English?
25             THE INTERPRETER:  I have an associate degree in
```

M3UCkroP

1    English.

2              THE COURT:  Thank you.  How long have you been

3    speaking English?

4              THE INTERPRETER:  I would say my entire life.

5              THE COURT:  Thank you.  Can I ask you to stand please.

6              You've been speaking English for your entire life?

7              THE INTERPRETER:  Yes.

8              THE COURT:  Can you please describe your formal

9    education in English.

10             THE INTERPRETER:  I have an associate degree in

11   English.

12             THE COURT:  Thank you.  Have you ever undergone any

13   formal training in simultaneous or consecutive interpreting?

14             THE INTERPRETER:  Yes, your Honor, I've done that.

15   And I've been to this court several times.

16             THE COURT:  Thank you.  Can you describe your

17   training, please.

18             THE INTERPRETER:  I've done simultaneous training.  I

19   also work for the unified court system for the past five years.

20   And I've been to this court.  I've translated for him a few

21   times.

22             THE COURT:  Thank you.  Have you passed any qualifying

23   or certifying interpreting or translation exams?

24             THE INTERPRETER:  Yes.  Yes, I do.

25             THE COURT:  Thank you.  What were they?

M3UCkroP

```
1              THE INTERPRETER:  I've done quality TrynEx (ph.)
2    education in translating, and I've also successfully done
3    translation for the unified court system, the education system.
4              THE COURT:  What interpreting credentials do you have?
5              THE INTERPRETER:  I would say I'm a unified -- I work
6    for the unified court system as a qualified interpreter for the
7    past five years.
8              THE COURT:  Thank you.  Good.  Thank you very much.
9              So let me just ask, sir, do you solemnly swear to
10   interpret these proceedings truly, fairly, and impartially to
11   the best of your ability so help you God?
12             THE INTERPRETER:  Yes, I do.
13             THE COURT:  Thank you very much.  Let's proceed.  You
14   should provide simultaneous interpretation going forward.
15             Just for your sake, Mr. Kromah, I just qualified the
16   interpreter, so we'll proceed.
17             I want to note again for the record that we're using
18   the services of an interpreter today.
19             Mr. Kromah, are you able to understand what the
20   interpreter is saying to you?
21             THE DEFENDANT:  Yes.
22             THE INTERPRETER:  He said he can hear, but I should
23   speak louder.
24             THE COURT:  Thank you.  Please do.
25             Mr. Kromah, did you have any prior difficulty
```

M3UCkroP

1   communicating with your lawyer, either directly or indirectly,

2   through an interpreter?

3           THE DEFENDANT:  No, never had any problems, your

4   Honor.

5           THE COURT:  Thank you.  Please let me know,

6   Mr. Kromah, if you have any difficulty understanding what's

7   happening in this proceeding or if you have any difficulty

8   understanding what the interpreter is saying to you.

9           THE DEFENDANT:  Okay.  I will do that.

10          THE COURT:  Great.  Thank you.  And to the extent that

11  you can, let's try to do simultaneous translation.  Great.

12  Thank you.

13          So, Mr. Kromah, I've been informed you wish to plead

14  guilty to Counts One, Two, and Three of the indictment that's

15  numbered S1 19CR338; is that correct?

16          THE DEFENDANT:  Yes, we have spoken.

17          THE COURT:  Thank you.  Now, Mr. Kromah, before I

18  accept your guilty plea, I'm going to ask you a number of

19  questions so that I can establish to my satisfaction that you

20  wish to plead guilty because you are, in fact, guilty and not

21  for some other reason, and also to ensure that you know what

22  rights you'll be giving up if you choose to proceed and enter a

23  guilty plea in this matter.

24          If you don't understand any of my questions or if you

25  would like to consult with your lawyer at any point or for any

M3UCkroP

1   reason, please just let me know, I'll be happy to give you as

2   much time as you need in order to confer with your counsel and

3   I'll be happy to clarify any of my questions if it would be

4   helpful for you.  Thank you.

5          THE DEFENDANT:  Okay.

6          THE COURT:  Thank you.  The defendant -- I heard him

7   just say okay; is that right?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Thank you.  So what I would like to do,

10  Mr. Kromah, is to ask you to please stand to take an oath to

11  answer my questions truthfully.

12         Mr. Kromah, do you swear that the testimony that you

13  shall give this Court in this issue shall be the truth, the

14  whole truth, and nothing but the truth so help you God?

15         THE DEFENDANT:  I will say the truth.

16         THE COURT:  Thank you very much.  You can be seated,

17  Mr. Kromah.

18         Mr. Kromah, you're now under oath, which means that if

19  you answer any of my questions falsely, you can be prosecuted

20  for the separate crime of perjury or making false statements.

21  The government would have the right to use any statement that

22  you give under oath against you in such a prosecution.

23         Do you understand that?

24         THE INTERPRETER:  He said I should repeat what you

25  just said.

M3UCkroP

1          THE COURT:  Thank you.  I'm happy to.  Would you like

2     me to state it again so you can hear to?

3          THE INTERPRETER:  No, I can.

4          THE COURT:  Okay.  Please continue.

5          THE DEFENDANT:  Yes, I understood, sir.

6          THE COURT:  Good.  Thank you very much.

7          So first, Mr. Kromah, can you please tell me your full

8     name.

9          THE DEFENDANT:  My name is Moazu Kromah.

10          THE COURT:  Thank you.  How old are you?

11          THE DEFENDANT:  I'm 53 years old.

12          THE COURT:  Thank you.  Where were you born?

13          THE DEFENDANT:  I was born in Liberia.

14          THE COURT:  Thank you.  Are you a United States

15     citizen?

16          THE DEFENDANT:  No, this is my first time here.

17          THE COURT:  Thank you.  Mr. Kromah, how far did you go

18     in school?

19          THE DEFENDANT:  I stopped at the sixth class.  I spent

20     only six years of school.

21          THE COURT:  Thank you.  Can you please describe for

22     me, briefly, your employment experience.  What kind of jobs

23     have you had?

24          THE DEFENDANT:  As you are well aware, it is very

25     difficult to have jobs in Africa.  I was selling shoes.  I also

M3UCkroP

1    started selling clothes.  Sometimes take the wholesale shoes

2    and sell it to people on the street.  That's how I started

3    until a very long time.  And then after some while, there was

4    civil war in Liberia, and then I left Liberia and then I moved

5    to Guinea.  When I went -- when I just arrived in Guinea, I

6    discovered that that's a whole new ballgame.  Guinea was very,

7    very difficult than Liberia.  And then we started moving.  When

8    things are difficult in one place, you move to another.  So my

9    entire family started moving in different places.

10             THE COURT:  Thank you.  That's very helpful.  Anything

11   else you would like to share about your employment experience,

12   Mr. Kromah?

13             MR. CHABROWE:  Sorry, Judge.

14             THE COURT:  That's fine.

15             THE DEFENDANT:  Do you mean tell you what my

16   employment experience before coming here?

17             THE COURT:  Thank you.  What kind of jobs have you

18   had?  That's my principal question.

19             THE DEFENDANT:  Just like I said before, I was selling

20   clothes and shoes.

21             THE COURT:  Thank you very much, Mr. Kromah.

22             Mr. Kromah, have you ever been treated or hospitalized

23   for any mental illness?

24             THE DEFENDANT:  No.  No.  No.

25             THE COURT:  Thank you.  Are you currently or have you

M3UCkroP

```
1    recently been under the care of a physician, psychiatrist, or

2    psychologist?

3              THE DEFENDANT:  I started treatment with the

4    psychologist, but that's here in prison.

5              THE COURT:  Thank you.  What are you being treated

6    for?

7              THE DEFENDANT:  My lower back.  I have problem with my

8    lower back.

9              THE COURT:  Thank you.  Understood.

10             Is there anything about that injury that makes it

11   difficult for you to understand what's happening in this

12   proceeding?

13             THE DEFENDANT:  No.  No.  I can understand everything

14   clearly.

15             But I also want to add that they advised me to drink a

16   lot of water because I have some other health issues.

17             THE COURT:  Thank you very much.

18             Mr. Kromah, are you currently or have you recently

19   been hospitalized or treated for drug addiction?

20             THE DEFENDANT:  No.  No.  No.  No.

21             THE COURT:  Thank you.  Within the past 24 hours,

22   Mr. Kromah, have you used or taken any alcohol, drugs, or

23   medication?

24             THE DEFENDANT:  No, your Honor.  I don't even drink

25   alcohol.
```

M3UCkroP

1              THE COURT:  Thank you.  Is your mind clear today?

2              THE DEFENDANT:  My mind is clear and my mind is very,

3    very sharp.

4              THE COURT:  Thank you.  Do you understand what's

5    happening in this proceeding?

6              THE DEFENDANT:  Yes, I'm well aware of everything.

7              THE COURT:  Thank you.  Have you received a copy of

8    the indictment that's pending against you?

9              THE DEFENDANT:  Yes, I've seen everything.  And I've

10   read -- gone over everything.

11             THE COURT:  Thank you.  Have you had enough of a

12   chance to discuss with your lawyer the case in general?

13             THE DEFENDANT:  I've had sufficient time and I've had

14   enough opportunity to go over everything.

15             THE COURT:  Thank you.  In particular, have you had

16   the opportunity to discuss the charge to which you intend to

17   plead guilty and any possible defenses to those charges?

18             THE DEFENDANT:  I understood everything clearly.

19             THE COURT:  Thank you.  Has your lawyer explained to

20   you the consequences of entering a plea of guilty?

21             THE DEFENDANT:  Yes, he explained everything clearly.

22             THE COURT:  Thank you.  Are you fully satisfied with

23   your lawyer's representation of you?

24             THE DEFENDANT:  I'm clearly satisfied with the work my

25   lawyer has done for me.

M3UCkroP

1          THE COURT:  Thank you very much.

2          Counsel for defendant, let me turn to you.

3          Have you discussed this matter with your client?

4          MR. CHABROWE:  Yes, I have, your Honor.

5          THE COURT:  Thank you.  Is he capable of understanding

6    the nature of these proceedings?

7          MR. CHABROWE:  Yes, he is.

8          THE COURT:  Very good.  Thank you.

9          Counsel, do either of you have any doubt as to the

10   defendant's competence to plead at this time?

11         MR. SCHAEFFER:  No, your Honor.

12         MR. CHABROWE:  No.  Thank you.

13         THE COURT:  On the basis of Mr. Kromah's responses to

14   my questions, my observations of his demeanor here in court,

15   and the representations of counsel, I find that the defendant

16   is competent to enter a plea of guilty at this time.

17         Now, Mr. Kromah, before we turn to your plea, I'm

18   going to explain a number of constitutional rights that you

19   have.  I'm doing this because these are rights that you'll be

20   giving up if you choose to proceed and enter a guilty plea, so

21   please listen carefully to what I'm about to say.  If you don't

22   understand something, please stop me and your lawyer or I will

23   happily explain the matter more fully.

24         THE DEFENDANT:  Okay.  Understood.

25         THE COURT:  Thank you.  So first, Mr. Kromah, you have

M3UCkroP

1    the right to plead not guilty to the charges against you

2    contained in the indictment.

3              Do you understand that?

4              THE DEFENDANT:  Yes, I understood that.

5              THE COURT:  If you did plead not guilty, you would be

6    entitled to a speedy and public trial by a jury on the charges

7    against you contained in this indictment.

8              Do you understand that?

9              THE DEFENDANT:  Yes, I understood that.

10             THE COURT:  At a trial, you would be presumed to be

11   innocent and the government would be required to prove you

12   guilty by competent evidence beyond a reasonable doubt before

13   you could be found guilty.

14             Do you understand that?

15             THE DEFENDANT:  Yes, I understood that.

16             THE COURT:  A jury of 12 people would have to agree

17   unanimously that you were guilty and you would not have to

18   prove that you were innocent if you were to go to trial.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  At trial and at every stage of your case,

22   you would be entitled to be represented by a lawyer.  If you

23   could not afford a lawyer, one would be appointed for you at

24   public expense, that is, free of cost.

25             Do you understand that?

M3UCkroP

1      THE DEFENDANT:  Yes, I understood that.

2      THE COURT:  During a trial, the witnesses for the

3   government would have to come to court and testify in your

4   presence and your lawyer could cross examine the government's

5   witnesses and object to evidence offered by the government.

6      Do you understand that?

7      THE DEFENDANT:  Yes, I do.

8      THE COURT:  At trial, you would also have the

9   opportunity to offer evidence on your own behalf if you wished

10   to do so and you would have the right to compel witnesses to

11   come to court to testify in your defense.

12      THE DEFENDANT:  I understood everything, sir.

13      THE COURT:  So you understand that; is that right?

14      THE DEFENDANT:  Yes, I understood that.

15      THE COURT:  Thank you.  Now, at a trial, you would

16   have the right to testify if you chose to do so, but you would

17   also have the right not to testify, and if you decided not to

18   testify, no one, including the jury, could draw any inference

19   or suggestion of guilt from the fact that you did not testify.

20      Do you understand that?

21      THE DEFENDANT:  Yes.

22      THE COURT:  Do you understand that by pleading guilty,

23   you're giving up your right to seek suppression, that is,

24   exclusion from a trial of any evidence against you that the

25   government may have obtained in an improper manner?

M3UCkroP

1          THE DEFENDANT:  Yes, I know that, sir.

2          THE COURT:  If you were convicted at a trial, you

3    would have the right to appeal that verdict.

4          Do you understand that?

5          THE DEFENDANT:  Yes, I know that, sir.

6          THE COURT:  Even now, Mr. Kromah, as you're preparing

7    to enter this plea, you have the right to change your mind and

8    to plead not guilty, to go to trial on the charges contained in

9    this indictment.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I know that.

12          THE COURT:  If you plead guilty, Mr. Kromah, you will

13    also have to give up your right not to incriminate yourself.  I

14    say that because I expect that later in today's proceeding, I

15    will ask you questions about what you did in order to satisfy

16    myself that you are guilty of the charged offenses, you will

17    have to admit and acknowledge your guilt.

18          Do you understand that?

19          THE DEFENDANT:  Yes, I understood that.

20          THE COURT:  If you plead guilty, Mr. Kromah, and if I

21    accept your plea, you will give up your right to a trial and

22    the other rights I've just discussed, other than the right to a

23    lawyer, which you have regardless of whether or not you plead

24    guilty, but there will be no trial and I will enter a judgment

25    of guilty and a sentence on the basis of your plea.  There will

M3UCkroP

```
 1   be no appeal with respect to whether the government could use
 2   the evidence that it has against you or with respect to whether
 3   you did or did not commit this crime.
 4              Do you understand that?
 5              THE DEFENDANT:  Yes, I understood that.
 6              THE COURT:  So Mr. Kromah, we just talked about a
 7   number of important rights that you have.
 8              Do you understand each and every one of those rights?
 9              THE DEFENDANT:  Yes, I understood that.
10              THE COURT:  Thank you.  And are you willing to give up
11   your right to a trial and the other rights I've just discussed
12   with you?
13              THE DEFENDANT:  Yes.
14              THE COURT:  Thank you.  So Mr. Kromah, I understand
15   that you've received a copy of the indictment containing the
16   charges against you.
17              Have you read it?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Thank you.  Mr. Kromah, do you understand
20   that Count One charges that from at least in or about
21   December 2012 through at least in or about May 2019, in the
22   Southern District of New York and elsewhere, you, together with
23   others known and unknown, conspired to commit wildlife
24   trafficking in violation of Title 18, United States Code,
25   Sections 371 and 3238?
```

M3UCkroP

1          Do you understand that's the nature of the charge

2     against you?

3          THE DEFENDANT:  Yes, I know -- I understand that.

4          THE COURT:  Thank you.  Counsel for the United States,

5     could I ask you to please state the elements of that offense.

6          MR. SCHAEFFER:  Yes, your Honor.

7          Count One charges the defendant with conspiracy to

8     commit wildlife trafficking in violation of 16, U.S.C. Section

9     3372(a).

10          The crime of conspiracy has three elements:

11          First, that there was an unlawful agreement by two or

12     more people to violate the laws of the United States;

13          Second, that the defendant became a member of the

14     conspiracy, that is, he knowingly associated with the

15     conspiracy and participated in the conspiracy; and

16          Third, that one of the members of the conspiracy

17     knowingly committed at least one overt act.

18          As noted, the charged conspiracy has three objects in

19     the indictment, but the defendant is pleading only to wildlife

20     trafficking.

21          That crime has three elements:

22          First, that the defendant knowingly imported,

23     exported, transported, sold, received, acquired, or purchased

24     wildlife as alleged in the S1;

25          Second, that the wildlife had been taken, possessed,

M3UCkroP

1    transported, or sold in violation of any law, treaty, or

2    regulation of the United States, any law or regulation of any

3    state, or in violation of foreign law; and

4            Third, that the defendant knew that the wildlife had

5    been taken, possessed, transported, or sold, in violation of

6    any law, treaty, or regulation of the United States, any law or

7    regulation of any state, or foreign law.

8            Counts Two and Three of the indictment --

9            THE COURT:  Bear with me for just a moment.  I'll come

10   to that in just a moment.

11           MR. SCHAEFFER:  My apologies, your Honor.

12           THE COURT:  Not a problem.  Thank you very much.

13           Mr. Kromah, you just heard the elements of Count One

14   of the offense that's charged here, which is conspiracy to

15   commit wildlife trafficking in violation of 18, U.S.C.,

16   Sections 371 and 3238.

17           What I'd like to do now is to ask if you understand

18   the charge in Count Two.

19           Do you understand that Count Two charges that from in

20   or about February of 2018 through in or about March 2018, in

21   the Southern District of New York and elsewhere, you knowingly

22   imported, exported, transported, sold, received, acquired, and

23   purchased wildlife, and knowing that such wildlife was taken,

24   possessed, transported, and sold in violation of foreign law in

25   violation of Title 16, United States Code, Sections

M3UCkroP

1   3372(a)(2)(A), 3373(d)(1)(B), and Title 18, United States Code,

2   Sections 3238 and 2?

3          Do you understand that that's the nature of the charge

4   against you in Count Two of the indictment?

5          THE DEFENDANT:  Yes, I understood everything.

6          THE COURT:  Thank you.  Counsel for the United States,

7   can I ask you to please state the elements of that offense.

8          MR. SCHAEFFER:  Yes, your Honor.  The elements of

9   Count Two are the same as the object crime for Count One.

10          First, that the defendant knowingly imported,

11   exported, transported, sold, received, acquired, or purchased

12   wildlife as alleged in the S1;

13          Second, that the wildlife had been taken, possessed,

14   transported, or sold in violation of any law, treaty, or

15   regulation of the United States, any law or regulation of any

16   state, or in violation of any foreign law; and

17          Third, that the defendant knew the wildlife had been

18   taken, possessed, transported, or sold in violation of any law,

19   treaty, or regulation of the United States, any law or

20   regulation of any state, or any foreign law.

21          THE COURT:  Thank you.  Mr. Kromah, do you understand

22   that Count Three charges that from in or about May 2018 through

23   in or about July 2018, in the Southern District of New York and

24   elsewhere, you knowingly imported, exported, transported, sold,

25   received, acquired, and purchased wildlife knowing that such

M3UCkroP

1    wildlife was taken, possessed, transported, and sold in

2    violation of foreign law, in violation of Title 16, United

3    States Code, Sections 3372(a)(2)(A, and 3373(d)(1)(B), and

4    Title 18, United States Code, Sections 3238 and 2?

5         Do you understand that's the nature of the charge

6    against you, Mr. Kromah?

7         THE DEFENDANT:  Yes, I understood that.

8         THE COURT:  Thank you.  Counsel for the United States,

9    are the elements for Count Three the same as those for Count

10   Two?

11        MR. SCHAEFFER:  They are, your Honor.

12        THE COURT:  Thank you.  So, Mr. Kromah, do you

13   understand that if you were to go to trial, that for each of

14   these counts, the government would be required to prove all of

15   the substantive elements of each of the crimes beyond a

16   reasonable doubt?

17        THE DEFENDANT:  Yes, I understood that.

18        THE COURT:  Do you understand that the government

19   would also have to prove that venue was appropriate in the

20   Southern District of New York by what we call a preponderance

21   of the evidence, that is that it is more likely than not?

22        THE DEFENDANT:  Yes, I do.

23        THE COURT:  Thank you.  Now, Mr. Kromah, I'm going to

24   tell you the maximum possible penalty for each of these crimes.

25   The maximum means the most that could possibly be imposed.  It

M3UCkroP

1    does not mean that is what you will necessarily receive, but

2    you have to understand that by pleading guilty, you're exposing

3    yourself to the possibility of receiving any combination of

4    punishments up to the maximum that I'm about to describe.

5             THE DEFENDANT:  Yes, I understood that.

6             THE COURT:  Thank you.  So first, Mr. Kromah, I'm

7    going to tell you about the possible restrictions on your

8    liberty.

9             The maximum term of imprisonment for Count One is five

10   years, which could be followed by up to three years of

11   supervised release.

12            The maximum term of imprisonment for Count Two is five

13   years, which could be followed by up to three years of

14   supervised release.

15            The maximum term of imprisonment for Count Three is

16   five years, which could be followed by up to three years of

17   supervised release.

18            Mr. Kromah, if you're sentenced to a term of

19   supervised release, you'll be subject to supervision by the

20   United States Probation Office.  There will be rules of

21   supervised release that you will have to follow, and if you

22   violate those rules, you can be returned to prison without a

23   jury trial to serve additional time with no credit for time

24   that you served in prison as a result of your sentence and no

25   credit for any time spent on post-release supervision.

M3UCkroP

1          You should also understand that there is no parole in

2    the federal system and that if you are sentenced to prison, you

3    will not be released early on parole.

4          Do you understand all of this?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  Thank you.  Second, Mr. Kromah, in

7    addition to these restrictions on your liberty, the maximum

8    possible punishment also includes certain financial penalties.

9    The maximum allowable fine for Count One is $250,000 or twice

10   the gross monetary gain derived from the offense or twice the

11   gross monetary loss to persons other than yourself, whichever

12   of those is greater.  The maximum allowable fine for each of

13   Count Two and Count Three is $20,000.

14         In addition, I can order restitution to any person or

15   entity injured as a result of your criminal conduct.

16         I can also order you to forfeit any property derived

17   from the offense or used to facilitate the offense.

18         And finally, I must also order a mandatory special

19   assessment of $100 for each offense to which you plead guilty

20   here.  That would be a total of $300.

21         Counsel, before I proceed, do either of you wish to

22   correct or amend any of the penalties I just described?

23         MR. SCHAEFFER:  No, your Honor.

24         MR. CHABROWE:  No, your Honor.

25         THE COURT:  Thank you.  Mr. Kromah, do you understand

M3UCkroP

1    that these are the maximum possible penalties?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  Thank you.  Do you understand that it's

4    possible, taking all three counts together, that you could be

5    sent to prison for a total of 15 years imprisonment?

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  Thank you.  So, Mr. Kromah, I understand

8    that you're not a United States citizen, so let me just ask you

9    a few questions about the immigration consequences of your

10   plea.

11             Do you understand, Mr. Kromah, that as a result of

12   your guilty plea, there may be adverse effects on your

13   immigration status, including further detention following

14   completion of your sentence?

15             THE DEFENDANT:  Yes, I'm aware of that.

16             THE COURT:  Do you understand that as a result of your

17   guilty plea, you may be removed from the United States, denied

18   citizenship, and denied admission to the United States in the

19   future?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Thank you.  Do you understand that your

22   removal from the United States could be mandatory?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Did you discuss the possible immigration

25   consequences of your plea with your lawyer?

M3UCkroP

1          THE DEFENDANT:  Yes, he explained everything to me.

2          THE COURT:  Thank you.  Do you understand that in the

3     event your conviction results in adverse effects on your

4     immigration status, you will still be bound by your plea of

5     guilty and that you will not be able to withdraw your plea,

6     regardless of any advice that you've received from your counsel

7     or any others regarding the immigration consequences of your

8     plea?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Thank you.  Do you understand that as a

11    result of your guilty plea, Mr. Kromah, you may lose certain

12    valuable civil rights, to the extent that you have them or

13    could otherwise obtain them now, such as the right to vote, the

14    right to hold public office, the right to serve on a jury, and

15    the right to possess any kind of a firearm?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Mr. Kromah, are you serving any other

18    sentence at this time, either state or federal?

19          THE DEFENDANT:  No.

20          THE COURT:  Thank you.  To your knowledge, Mr. Kromah,

21    are you being prosecuted in state court for any crime?

22          THE DEFENDANT:  No.

23          THE COURT:  Thank you.  Mr. Kromah, do you understand

24    that if your lawyer or anyone else has attempted to predict

25    what your sentence will be, that their prediction could be

M3UCkroP

1    wrong?

2            THE DEFENDANT:  Yeah, I'm aware of that.

3            THE COURT:  Thank you.  Are you aware that your

4    sentence may be different from any estimate that your attorney

5    may have given you?

6            THE DEFENDANT:  Yes, I'm well aware.

7            THE COURT:  Thank you.  That's good, because no one,

8    not your lawyer, not the government's lawyer, really no one can

9    give you any assurance of what your sentence will be because

10   I'm going to decide your sentence and I'm not going to do that

11   now.

12           Do you understand that?

13           THE DEFENDANT:  Yes, I'm well aware.  My lawyer

14   explained everything clearly to me.

15           THE COURT:  Very good.  I'm happy to hear that.

16           Now, Mr. Kromah, before I impose your sentence, I will

17   review a presentence report prepared by the probation

18   department.  You and your counsel and counsel for the United

19   States will have the opportunity to challenge the facts that

20   are reported in the presentence report, as well as the

21   application of the advisory sentencing guidelines recommended

22   by the probation officer.  I'm obliged to do my own independent

23   calculation of the sentencing guidelines range.  After your

24   initial advisory guidelines range has been determined, I have

25   the authority in some circumstances to depart upward and

M3UCkroP

```
 1    downward from that range.  Ultimately, I'll determine what a
 2    reasonable sentence is for you based on the number of
 3    sentencing factors which are contained in a statute.  That
 4    statute can be found at 18, United States Code,
 5    Section 3553(a), but that may result in the imposition of a
 6    sentence that's either greater or lesser than the advisory
 7    sentencing guidelines range.
 8              Do you understand all of this?
 9              THE DEFENDANT:  Yes, I'm well aware.
10              THE COURT:  Thank you.  And have you and your attorney
11    discussed how the advisory sentencing guidelines might apply to
12    your case?
13              THE DEFENDANT:  Yes, he did.
14              THE COURT:  Thank you.  So Mr. Kromah, even if your
15    sentence is different from what your lawyer or anyone else has
16    told you it might be, even if it's different from what you
17    expect or from what's contained in a written plea agreement
18    that you've entered into with the government, you will still be
19    bound by your guilty plea and will not be allowed to withdraw
20    your plea of guilty.
21              Do you understand that?
22              THE DEFENDANT:  Yes.
23              THE COURT:  Thank you.  So Mr. Kromah, we've just
24    talked about a number of important consequences of your plea --
25    yes.  Please --
```

M3UCkroP

1          THE INTERPRETER:  He said his headphone stopped.

2          THE COURT:  Thank you.  Let's take a moment and please

3    see what you can do to correct it.

4          THE DEFENDANT:  I'm only hearing noises.  I'm not

5    hearing anything.

6          THE COURT:  Let me confirm, Mr. Kromah, are you able

7    to hear clearly now?

8          THE DEFENDANT:  Yeah, I can hear you clearly this way.

9          THE COURT:  Just for the interpreter, if you would

10   like to move closer, you may.

11         Most importantly, Mr. Kromah, please let me know if

12   you have any difficulty understanding what's being said.

13         THE DEFENDANT:  Yeah, I can hear clearly, better than

14   before.

15         THE COURT:  Thank you.  So Mr. Kromah, I think that

16   the last thing that I was saying, I know you heard my prior

17   question, but let me repeat my last question.

18         Mr. Kromah, even if your sentence is different from

19   what your lawyer or anyone else may have told you it might be,

20   even if it's different from what you expect or from what's

21   contained in a written plea agreement that you've entered into

22   with the government, you'll still be bound by your guilty plea

23   and will not be allowed to withdraw your plea of guilty.

24         Do you understand that?

25         THE DEFENDANT:  Yes, I'm well aware.

M3UCkroP

| | |
|---|---|
| 1 | THE COURT:  Thank you.  So Mr. Kromah, we've just |
| 2 | talked about a number of significant consequences of your plea. |

3      Do you understand all of the consequences of your plea

4 that we've just discussed?

5      THE DEFENDANT:  Yes, I understood everything.

6      THE COURT:  Thank you.  So Mr. Kromah, I understand

7 that there is a written agreement between you and your lawyer

8 and the lawyer for the government.  I've been handed the

9 original --

10      THE DEFENDANT:  Yes, they read it for me.

11      THE COURT:  Thank you.  Good.  I have the original

12 letter plea agreement, which is dated March 14, 2022, to your

13 lawyer from Assistant United States Attorney Jarrod Schaeffer.

14 I'm going to mark this as Court Exhibit 1 and I'm going to hand

15 it forward to the United States to retain in its possession.

16      Before I do, I would like to ask you some questions

17 about this letter, if I can, please, Mr. Kromah.

18      So first, Mr. Kromah, did you sign the original of the

19 plea agreement on the last page?

20      THE DEFENDANT:  Yes, that's my signature.

21      THE COURT:  Thank you.  Did you do that today in the

22 presence of your lawyer?

23      THE DEFENDANT:  Yeah, my lawyer was very close to me

24 when I signed it.

25      THE COURT:  Thank you.  Did you read the agreement

M3UCkroP

1    before you signed it?

2              THE DEFENDANT:  He read everything to me before

3    signing.

4              THE COURT:  Thank you.  Was it translated to you?

5              THE DEFENDANT:  I understood everything and he read

6    everything to me and I understood everything.

7              THE COURT:  Thank you.  Did you discuss it with your

8    lawyer before you signed it?

9              THE DEFENDANT:  Yes, we had a discussion before I

10   signed it.

11             THE COURT:  Thank you.  And I understand you said

12   earlier that you fully understood the agreement before you

13   signed it; is that correct?

14             Please, take your time, counsel.  I'm taking a break

15   to allow the defendant to confer with his counsel.  Please, go

16   ahead.

17             (Defendant and counsel conferred)

18             MR. CHABROWE:  Thank you, your Honor.  Okay.

19             THE COURT:  That's fine.  So Mr. Kromah, did you fully

20   understand the letter agreement before you signed it?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Thank you.  Mr. Kromah, one of the

23   features of your agreement with the government is that you've

24   agreed upon the advisory guidelines range that applies in this

25   case.  You should know that agreement is binding on you and

M3UCkroP

1    it's binding on the government, but it's not binding on me.  As

2    I told you earlier, I have my own obligation to determine the

3    correct guidelines range and then what the appropriate sentence

4    is in your case.

5          Now, I'm not saying that I will come up with any range

6    that's different from the one that's included in the agreement

7    with the government, but what's important is for you to

8    understand that if I do, I will not let you withdraw your plea

9    even if the range that I determine is higher than the one you

10   agreed to with the government.

11         Do you understand that?

12         THE DEFENDANT:  Yes, I do.

13         THE COURT:  Do you understand that under some

14   circumstances, you or the government may have the right to

15   appeal any sentence that I impose?

16         THE DEFENDANT:  Yes, I do.

17         THE COURT:  Thank you.  In your plea agreement, you've

18   waived a number of rights to appeal your conviction and

19   sentence.  In particular, you've agreed not to file a direct

20   appeal or to bring a collateral challenge, including but not

21   limited to an application under Title 28, United States Code,

22   Section 2255 or 2241 of any sentence within or below the

23   stipulated guidelines range of 63 to 78 months imprisonment.

24   You've also agreed not to appeal or bring a collateral

25   challenge to any term of supervised release that's less than or

M3UCkroP

equal to the statutory maximum.  You've also agreed not to

appeal or bring a collateral challenge of any fine that's less

than or equal to $250,000.  And you've also agreed not to

appeal or bring a collateral challenge of any special

assessment that's less than or equal to $300.

Moreover, you've agreed to waive any right to

challenge your conviction and sentence on direct appeal or

collaterally on the ground that the government has failed to

produce any discovery material, Jencks Act material,

exculpatory material pursuant to *Brady v. Maryland*, other than

information establishing your factual innocence, or impeachment

material pursuant to *Giglio v. United States* that has not

already been produced as of the date of the signing of the

agreement.

Furthermore, you've agreed not to challenge your

conviction or sentence on direct appeal or collaterally on the

basis of any actual or perceived adverse immigration

consequences, including removal or denaturalization resulting

from your guilty plea and conviction.

So, Mr. Kromah, do you understand the rights to appeal

or otherwise challenge your conviction and sentence that you

have waived in your plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  And are you willing to waive those rights?

THE DEFENDANT:  Yes.

M3UCkroP

1          THE COURT:  Thank you.  Mr. Kromah, does this written

2     plea agreement constitute your complete and total understanding

3     of the entire agreement between you and the government?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Thank you.  Has anything been left out?

6          THE DEFENDANT:  It's good like that.

7          THE COURT:  Thank you.  Other than what is written in

8     this agreement, has anyone made any promise to you or offered

9     you any inducement to plead guilty or to sign the plea

10    agreement?

11         THE DEFENDANT:  No.

12         THE COURT:  Has anyone threatened you or forced you to

13    plead guilty or to sign the plea agreement?

14         THE DEFENDANT:  No.

15         THE COURT:  Has anyone made a promise to you as to

16    what your sentence will be?

17         THE DEFENDANT:  No.

18         THE COURT:  Thank you.  So Mr. Kromah, I told you

19    earlier that there would come a time today at which you would

20    tell me what it is that you did that makes you believe that you

21    are guilty of this offense.  Now is that time.  Would you

22    please tell me what it is that you did that makes you believe

23    that you are guilty of each of these three offenses.

24         THE DEFENDANT:  I was part of a conspiracy to

25    slaughter rhinoceros and also other wildlife and to transport

M3UCkroP

1        them to America.

2                   THE COURT:  Thank you.  Did you know that taking those

3        items of wildlife was in violation of U.S. or foreign law?

4                   THE DEFENDANT:  Yes, I know that.

5                   THE COURT:  You said that you were engaged in a

6        conspiracy.  Did you agree with other people to engage in the

7        illegal transport of wildlife?

8                   THE DEFENDANT:  Yes.

9                   THE COURT:  Counsel, I'm going to turn to the

10       government for a proffer.

11                  First, counsel, I'd like to hear from you, counsel for

12       defendant -- actually let me hear from the defendant first.

13                  Mr. Kromah, when you did those things, did you know

14       what you were doing was wrong and illegal?

15                  THE DEFENDANT:  Yes.

16                  THE COURT:  Thank you.  So counsel for defendant, do

17       you know of any valid defense that would prevail at trial or do

18       you know of any other reason why your client should not be

19       permitted to plead guilty?

20                  MR. CHABROWE:  I do not, your Honor.

21                  Also, just as an aside, is it possible, I have a

22       4 o'clock sentencing in front of Judge Stein upstairs.  Would

23       it be possible to just -- is it possible someone could maybe

24       just reach out to them and say that I'm running a little bit

25       late.

M3UCkroP

```
 1              THE COURT:  Yes.
 2              MR. CHABROWE:  I would email, but his regular deputy
 3    who is on email is out this week, so I'm not sure if it would
 4    get -- and the U.S. Attorney who was on the case is actually
 5    having someone else cover.  So I'm not even sure of anyone
 6    there I could reach.  So if someone could, that would be great.
 7              THE COURT:  Thank you.  That's fine.  I'll ask my
 8    staff to reach out to Judge Stein's chambers.  The directory
 9    should have the number.
10              So counsel for the United States, are there any
11    additional questions that you'd like me to ask the defendant?
12              MR. SCHAEFFER:  The government is happy to make a
13    proffer as to several items, your Honor.
14              THE COURT:  Please do.
15              MR. SCHAEFFER:  Before I do that, I would ask the
16    Court to just clarify with the defendant whether he met with
17    others to discuss the transportation and trafficking of the
18    wildlife.
19              THE COURT:  So Mr. Kromah, did you meet with other
20    people to discuss the trafficking and transportation of
21    wildlife?
22              THE DEFENDANT:  Yes.
23              THE COURT:  Thank you.  Counsel, I would like to hear
24    a proffer on venue and then I would like you to please
25    summarize what the substantive evidence would show in this case
```

M3UCkroP

1    were we to go to trial, just to hear what the factual support

2    is for the guilty plea.

3             MR. SCHAEFFER:  Certainly, your Honor.

4             With respect to venue, the defendant was first brought

5    to the Southern District of New York pursuant to

6    18 U.S.C. 3238.  The government also proffers that the

7    purchaser of the wildlife that forms the basis of the charged

8    offenses in Counts One through Three was represented to the

9    defendant and his coconspirators to reside in Manhattan and the

10   money drawn to pay for those items came from a New York bank

11   account and was represented to be from a New York bank account.

12            The government would also represent that with respect

13   to wildlife trafficking, transporting and selling rhinoceros

14   horns and elephant ivory, which is the wildlife involved here,

15   violates the laws, treaties, and regulations of the United

16   States, Kenya, and Uganda, including, among other things, the

17   convention on international trade in endangered species of wild

18   fauna and flora.  As implemented by the Endangered Species Act,

19   16 U.S.C. Section 1531 et seq. and related provisions of the

20   code of federal regulations.

21            At trial, of the government would offer evidence as to

22   Counts One through Three that would include, among other

23   things, records of phone, text and instant messages, phone

24   communications, texts, and instant messages, including those

25   cited in the indictment, and encrypted communications with and

M3UCkroP

1    among the defendants concerning the wildlife trafficking here;

2    financial records, including information regarding wire

3    transfers and instructions to pay for the wildlife that was

4    trafficked; packaging and shipping materials, including bills

5    of laiding and items used to hide or disguise the wildlife

6    items that were sold by members of the conspiracy; images of

7    rhinoceros horns offered for sale by members of the conspiracy;

8    testimony from federal agents and others regarding a number of

9    topics, including surveillance and communications with and

10   among the defendants; and then actual rhinoceros horns

11   purchased from the defendant and his coconspirators and taken

12   into custody by law enforcement following controlled purchases

13   and deliveries, along with evidence of the species from which

14   those horns originated.

15          THE COURT:  Thank you.  Good.  Counsel, do both of you

16   agree there is a sufficient factual predicate for a guilty

17   plea?

18          MR. SCHAEFFER:  Yes, your Honor.

19          MR. CHABROWE:  Yes, your Honor.

20          THE COURT:  Thank you.  Do either of you know of any

21   reason that I should not accept the defendant's plea of guilty?

22          MR. SCHAEFFER:  No, your Honor.

23          MR. CHABROWE:  No, your Honor.

24          THE COURT:  Thank you.  Mr. Kromah, can I ask you to

25   please stand.  Thank you.

M3UCkroP

1          Mr. Kromah, Count One charges that from at least in or

2     about December of 2012 through at least in or about May 2019,

3     in the Southern District of New York and elsewhere, that you,

4     together with others known and unknown, conspired to commit

5     wildlife trafficking in violation of Title 18, United States

6     Code, Sections 371 and 3238.

7          How do you plead to that count?

8          THE DEFENDANT:  I'm guilty.

9          THE COURT:  Count Two charges that from in or about

10    February 2018 through in or about March 2018, in the Southern

11    District of New York and elsewhere, you knowingly imported,

12    exported, transported, sold, received, acquired, and purchased

13    wildlife knowing that such wildlife was taken, possessed,

14    transported, and sold in violation of foreign law, in violation

15    of Title 16, United States Code, sections 3372(a)(2)(A) and

16    3373(d)(1)(B), and Title 18, United States Code, Sections 3238

17    and 2.

18         How do you plead to this count?

19         THE DEFENDANT:  I'm guilty.

20         THE COURT:  Thank you.  Count Three charges that from

21    in or about May 2018 through in or about July 2018, in the

22    Southern District of New York and elsewhere, you knowingly

23    imported, exported, transported, sold, received, acquired, and

24    purchased wildlife knowing that such wildlife was taken,

25    possessed, transported, and sold in violation of foreign law,

M3UCkroP

1    in violation of Title 16, United States Code, Sections

2    3372(a)(2)(A), and 3373(d)(1)(B), and Title 18, United States

3    Code, Sections 3238 and 2.

4              How do you plead to this count?

5              THE DEFENDANT:  I'm guilty.

6              THE COURT:  Thank you.  Mr. Kromah, there is a

7    forfeiture allegation with respect to Counts One, Two, and

8    Three of the indictment.

9              Do you admit the forfeiture allegations with respect

10   to Counts One, Two, and Three of the indictment here?

11             THE DEFENDANT:  Yes, I'm guilty.

12             THE COURT:  Thank you.  It is the finding of the Court

13   in this case that Mr. Kromah is fully competent and capable of

14   entering an informed plea, that the defendant is aware of the

15   nature of the charges and the consequences of the plea, and

16   that the plea of guilty is a knowing and voluntary plea

17   supported by an independent basis in fact containing each of

18   the essential elements of the offense.  The plea is therefore

19   accepted and the defendant is now adjudged guilty of that

20   offense.

21             Thank you, Mr. Kromah.  You can be seated.

22             THE DEFENDANT:  Thank you very much.

23             THE COURT:  My pleasure.  So Mr. Kromah, the probation

24   department will want to interview you in connection with the

25   presentence report that it will prepare.

M3UCkroP

1       Counsel for defendant, do you wish to be present for

2   an interview in connection with that report?

3       MR. CHABROWE:  Yes, please.

4       THE COURT:  Thank you.  I order that there be no

5   interview unless counsel is present.

6       Counsel for the United States, please provide the

7   probation office with your factual statement within seven days.

8       Counsel for defendant, please arrange for Mr. Kromah

9   to be interviewed by the probation department within the next

10  14 days.

11      Mr. Kromah, it's up to you about what you want to say

12  to the probation department, but one thing that I would ask is

13  that if you choose to speak to the probation office, that you

14  make sure that anything that you choose to say be truthful and

15  accurate.  This report is very important for me in deciding

16  what the appropriate sentence is in your case.  I expect to

17  review it very carefully.

18      I'm talking about this because you and your counsel

19  have a right to examine the report and to comment on it to the

20  probation officer who's preparing it and to me at the time of

21  sentencing.  So I just want to urge you to take the time to

22  review that report and to discuss it with your lawyer before

23  sentencing.  If you see any mistakes in it or other problems

24  with it, please point them out to your counsel so that he can

25  try to correct them, either the probation officer or bring them

M3UCkroP

```
 1    to my attention at sentencing.

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Good.  Thank you.  So we're going to set

 4    sentencing for June 29, 2022, at 11:00 a.m.

 5              Counsel, does that date and time work for each of you?

 6              First, counsel for the government.

 7              MR. SCHAEFFER:  Yes, your Honor.

 8              MR. CHABROWE:  Yes.

 9              THE COURT:  So sentencing will happen then.

10              Let me refer each of you to my individual rules of

11    practice for criminal cases, which are available on the

12    website.  The same rules for sentencing --

13              THE DEFENDANT:  June 29th, your Honor?

14              THE COURT:  29th, yes.

15              THE DEFENDANT:  Okay.

16              THE COURT:  Thank you.  It takes about 90 days between

17    the probation office writing the report and then the like.

18              So, the defense submissions are due two weeks prior to

19    sentencing and the government's submissions are due one week

20    prior to sentencing.

21              Anything else before we adjourn?

22              Counsel first for the United States.

23              MR. SCHAEFFER:  Yes, your Honor.  I think that we have

24    a signed forfeiture order for the Court.

25              THE COURT:  Thank you.  Can you please hand it up.
```

M3UCkroP

1    We've let Judge Stein's chambers know that you're

2    going to be late.

3    MR. CHABROWE:  Thank you so much.

4    THE COURT:  So I've been handed a subsequent

5    preliminary order of forfeiture as to specific property, which

6    has been executed by counsel for the United States as well as

7    the defendant and his counsel, dated today.  I've reviewed the

8    consent order of forfeiture and I'm executing it now.  I'm

9    going to have it handed forward to the United States to have

10   the executed version docketed.

11   Anything else before we adjourn?

12   Counsel first for the government.

13   MR. SCHAEFFER:  Your Honor, I think since this is an

14   order of the Court, I'm not sure that the government can

15   actually docket it.

16   THE COURT:  That may be true.  We'll keep it.

17   MR. SCHAEFFER:  Thank you, your Honor.  Nothing else,

18   your Honor.

19   MR. CHABROWE:  Nothing from the defense.

20   THE COURT:  Thank you.  This proceeding is adjourned.

21                          *  *  *

22

23

24

25