

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 11, 2022

**BY ECF**
The Honorable Gregory W. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Moazu Kromah*, 19 Cr. 338 (GHW)

Dear Judge Woods:

      The defendant in the above-captioned case, Moazu Kromah, is scheduled to be sentenced on August 18, 2021 at 10:00 a.m., after pleading guilty to conspiracy to commit wildlife trafficking and wildlife trafficking, in violation of 18 U.S.C. § 371 and 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B). The Government respectfully submits this letter in advance of the sentencing and in response to the defendant's sentencing submission filed on August 8, 2022 (ECF No. 160 ("Def. Mem")).

      As an initial matter, the Government does not have any objections to the Presentence Investigation Report revised on July 18, 2022 (the "PSR"), which determined that the defendant's applicable United States Sentencing Guidelines (the "Guidelines") sentence is 63 to 78 months' imprisonment. For the reasons set forth below, the Government respectfully submits that the Court sentence the defendant to a sentence of 63 months at the bottom of the Guidelines range, which would be sufficient but not greater than necessary to serve the purposes of sentencing and would be fair and appropriate in this case.

**I.    APPLICABLE LAW**

      As the Court is aware, the Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005), although they are no longer mandatory. "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" – that range "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007). As the Second Circuit has noted, although the Guidelines do not dictate a presumptively reasonable sentence, they are not merely a "body of casual advice." *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

After making the initial Guidelines calculation, a sentencing judge must then consider the seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). To the extent the Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Cavera*, 550 F.3d at 189 (quoting *Gall,* 552 U.S. at 50).

## II.   DISCUSSION

The Government respectfully submits that the application of the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) supports the imposition of a sentence of 63 months in prison at the bottom of the Guidelines range.

### A.   The Seriousness of the Defendant's Conduct

First, a sentence within the Guidelines range is necessary to reflect the seriousness of the defendant's conduct and to provide just punishment for the offense. Here, the defendant was a member of a transnational conspiracy that engaged in the large-scale trafficking of illegal wildlife for a period of at least seven years. The amount of illegal wildlife trafficked by the conspiracy was massive – at least approximately 10 tons of elephant ivory and approximately 190 kilograms of rhino horns, which is estimated to have involved the illegal poaching of more than 35 rhinos and 100 elephants. (PSR ¶ 30.) This wildlife has total market value of more than approximately $7 million. (*Id.*) The defendant and his co-conspirators acquired bulk quantities of both black and white rhino horns and elephant ivory and sold them to foreign buyers, including those represented to be in Manhattan. The contraband was often concealed in

packaging that contained and was represented to contain only pieces of art, such as African masks and statues.

In particular, as set forth in the PSR, the defendant and his co-conspirators were directly involved in the sale and shipment of rhino horns to a confidential source working with the Government ("CS-1") and also discussed the sale of elephant ivory. For example, during a meeting with CS-1 on November 21, 2017 in Uganda, Kromah represented that he had elephant ivory available for sale, that he could arrange for shipping of the ivory, and he quoted a price per kilogram of ivory. (PSR ¶ 35.) In March 2018, after arranging the sale of a one-kilogram black rhino horn to CS-1 for approximately $18,000, the defendant and his co-conspirators shipped the horn concealed in an African mask. (*Id.* ¶¶ 39-41.) Subsequently, in July 2018, the defendant and his co-conspirators sold two white rhino horns weighing over five kilograms to CS-1 for approximately $94,000. (*Id.* ¶¶ 43-45.) Again, the horns were concealed in statues to avoid detection by law enforcement. (*Id.*)

Importantly, the defendant was not simply a lowly courier or a retail seller. He was part of an organized criminal group that has been involved in large-scale wildlife trafficking, money laundering, and smuggling across international borders. Moreover, together with co-conspirator Amara Cherif, Kromah played a managerial role in the conspiracy and had decision-making authority, which was demonstrated by his ability to agree to a particular transaction and dictate payment terms. (PSR ¶¶ 48-51.) Kromah is therefore one of top two most culpable defendants in the conspiracy.

The seriousness of the defendant's crimes cannot be overstated. Criminal violations of wildlife statutes harm the public and our natural resources. They create demand and a market for the exploitation of endangered species such as the highly endangered black rhinoceros. (PSR ¶ 21.) The defendant is directly responsible for the decimation of global populations of these endangered and threatened animals, which play a vital role in the ecosystem. Black rhinos are critically endangered, with the population estimated to be no more than approximately 5,000 worldwide. (*Id.*) Moreover, due largely to the ivory trade, approximately 90% of African elephants have been wiped out in the last century, leaving an estimated 415,000 wild African elephants alive today. (*Id.*) The means used to commit these crimes, such as the sale of endangered and protected species to foreign nationals and others, and the falsification of documents and disguised packaging, also undermine conservation efforts and the Government's efforts protect our natural resources. The seriousness of this extensive conduct by the defendant over several years and the need to provide just punishment warrant a significant sentence of imprisonment.

### B. The Need for Adequate Specific Deterrence and to Protect the Public

Second, a significant sentence of imprisonment is necessary for specific deterrence to this defendant and to protect the public from further crimes of the defendant. Contrary to the defendant's submission, Kromah is not a first-time offender and this is in no way aberrant conduct. (Def. Mem. at 5.) On February 17, 2017, Ugandan law enforcement arrested the defendant and another individual at an illicit wildlife safehouse in Kampala, Uganda. In

connection with this arrest, Ugandan authorities seized a digital scale, various cutting tools, large shipping drums with airway bill stickers affixed which contained ivory pieces, suitcases which contained ivory pieces, a dug out log that was likely intended to obfuscate elephant ivory in air shipments to buyers in Southeast Asia, and two Apple iPhones belonging to Kromah.[1] In total, approximately 437 pieces of elephant ivory weighing more than a ton were seized at the safehouse in connection with the defendant's arrest in Uganda. After his February 17, 2017 arrest in Uganda, Kromah was released on bail. On March 7, 2017, Kromah was charged in the Kampala District in Uganda for unlawful possession of a protected species, unlawful importation of a protected species, and conspiracy to commit a felony and money laundering.[2]

Despite having pending charges in Uganda for unlawful possession and importation of illegal wildlife, Kromah continued to engage in criminal conduct for years while he was on bail. Indeed, within at least approximately nine months of being arrested in Uganda in February 2017 surrounded by hundreds of pieces of elephant ivory, Kromah was offering to sell ivory to CS-1 in November 2017. (PSR ¶ 35.) Then, over the next year, he engaged in sales of white and black rhino horns to CS-1. Given the pending charges against him in Uganda, this is not a situation where the defendant is currently in the United States "solely for his failure to conform to its standards" (Def. Mem. at 4) – he also did not live up to the standards of law-abiding life in Uganda and chose to continue engaging in serious criminal conduct. This is thus a case where specific deterrence is extremely important, as previous charges for illegal wildlife trafficking in Uganda were not sufficient to deter the defendant. Accordingly, a substantial sentence at the bottom of the Guidelines range is necessary to discourage the defendant from committing further crimes and to impress upon him the serious consequences of his criminal conduct.

### C. The Need for General Deterrence and Respect for the Law

Third, a significant sentence of imprisonment is appropriate to ensure adequate general deterrence and to promote respect for the law. This case has attracted the attention of media and non-governmental organizations across the world due to the significance of the extraditions of prolific wildlife traffickers such as Kromah from Africa to the United States to face criminal

---

[1] As disclosed during discovery, Ugandan authorities provided the iPhones belonging to the defendant to the Government, which obtained a search warrant in this District to review the phones in this investigation.

[2] The charges in Uganda were dismissed on June 12, 2019, the same day Kromah was expelled to the United States, in order to facilitate the expulsion.

charges.[3] A prison sentence within the Guidelines range is necessary to send a message to other similarly situated individuals and the public that participating in wildlife trafficking in any capacity will not be treated leniently and will entail a significant period of incarceration. Such a message is particularly important because wildlife trafficking crimes, which are global in scope, are particularly difficult to detect and require aggressive and proactive investigation. For every seized shipment of rhino horn or ivory, there are countless illegal wildlife shipments that go undetected. Furthermore, prosecutions of wildlife trafficking abroad are rare, in part due to corruption,[4] which is why it is important to extradite wildlife traffickers abroad to the United States to face criminal charges. It is therefore important that those who would consider engaging in wildlife trafficking understand that the consequences will be serious. Accordingly, a significant sentence is both necessary and appropriate to promote general deterrence and respect for the law.

Finally, the defendant's request for a sentence of time served, or approximately 38 months, is simply not adequate given the vast scale of the defendant's criminal conduct. In other wildlife trafficking cases over the past 10 years, defendants who engaged in retail sales of rhino and ivory products on a much smaller scale were sentenced to years in prison, including more time than what Kromah is now seeking. *See, e.g., U.S. v. Felix Kha & Vinh Kha*, 12 Cr. 202 (C.D. Cal. May 16, 2013) (46-month and 42-month sentences for purchase and sale of rhino horns valued at between $1 million and $2.5 million); *U.S. v. Qiang Wang*, 13 Cr. 452 (KBF) (S.D.N.Y Dec. 5, 2013) (37-month sentence for purchase and sale of rhino horn and ivory items valued at between $1 million and $2.5 million); *U.S. v. Hess*, 15 Cr. 41 (N.D. Iowa Oct. 20, 2015) (27-month sentence for trafficking two black rhino horns); *U.S. v. Zhou*, 16 Cr. 363

---

[3] *See, e.g.,* BBC News, *Wildlife trafficking suspect seized after $1m reward* (Aug. 3, 2022), *available at* https://www.bbc.com/news/world-africa-62410603; Global Initiative Against Transnational Organized Crime, *The long road to prosecuting Moazu Kromah and his wildlife-trafficking network* (May-June 2022), *available at* https://globalinitiative.net/wp-content/uploads/2022/06/ESA-Obs-Risk-Bulletin-25-1.pdf; International Policy Digest, *Moazu Kromah and the Case of the West African Ivory Cartel* (Aug. 24, 2019), *available at* https://intpolicydigest.org/moazu-kromah-and-the-case-of-the-west-african-ivory-cartel; Save the Rhino, *More international collaboration is needed to take down poaching syndicates* (June 28, 2019), *available at* https://www.savetherhino.org/africa/international-collaboration-to-take-down-poaching-syndicates; Sierra Club, *Arrest of Key Ivory and Rhino Horn Trafficker Signals a Game Change* (June 25, 2019), *available at* https://www.sierraclub.org/sierra/arrest-key-ivory-and-rhino-horn-trafficker-signals-game-change; CBS News, *How Prince William helped U.S. agents bust a major wildlife and drug smuggling network* (June 14, 2019), *available at* https://www.cbsnews.com/news/wildlife-heroin-trafficking-ring-africa-bust-southern-district-new-york-fish-and-wildlife/.

[4] *See* Global Initiative Against Transnational Organized Crime, *The long road to prosecuting Moazu Kromah and his wildlife-trafficking network* (May-June 2022), *available at* https://globalinitiative.net/wp-content/uploads/2022/06/ESA-Obs-Risk-Bulletin-25-1.pdf (explaining that of the 15 major ivory-trafficking cases linked to Kromah that have been prosecuted in the Kenyan courts since 2010, only two have resulted in a conviction).

(E.D.N.Y. Sept. 18, 2017) (24-month sentence for selling five rhino horns for $50,000 profit); *U.S. v. Levine*, 14 Cr. 127 (D. Nev. Mar. 23, 2018) (27-month sentence for selling two black rhino horns). Kromah should receive significantly more time in prison than any of these defendants.

### III.     CONCLUSION

For the reasons set forth above, Government respectfully submits that a sentence of 63 months in prison at the bottom of the Guidelines range is sufficient but not greater than necessary to achieve the purposes of sentencing and would be fair and appropriate in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Sagar K. Ravi / Jarrod L. Schaeffer
Assistant United States Attorneys
(212) 637-2195 / 2270